UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

MOTION FOR AN ORDER AUTHORIZING THE DISTRICT COURT
TO CONSIDER A SUCCESSIVE OR SECOND HABEAS CORPUS APPLICATION
PURSUANT to 28 U.S.C. §§ 2244 (b), 2254
BY A PRISONER IN STATE CUSTODY

RECEIVED
U.S. C.A. 2nd CIR.
2015 NOV 13 AM 10:31
CLERK'S OFFICE

UNITED STATES DISTRICT COURT
FILED
JAN 8 2016
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

| NAME: | |
|---|---|
| Michael Rhymes | |
| PLACE OF CONFINEMENT: | PRISONER NUMBER: |
| Attica | 85-C-0181 |

16 CV 6015-S

**Instructions–Read Carefully**

(1) This motion must be legibly handwritten or typewritten and signed by the applicant under penalty of perjury. All documents must be on 8½ x 11 inch paper; the Court will not accept other paper sizes. Any false statements of a material fact may serve as the basis for prosecution and conviction for perjury.

(2) All questions must be answered concisely in the proper space on the form.

(3) Movant seeking leave to file a second or successive petition is required to use this form. In capital cases only, the use of this form is optional.

(4) Movant may use additional pages only to explain additional grounds for relief and facts that support those grounds. Separate petitions, motions, briefs, arguments, etc. should not be submitted.

(5) In capital cases only, the use of this form is optional, and separate petitions, motions, briefs, arguments, may be submitted.

(6) Movant must show in the motion to the Court of Appeals that the claim to be presented in a second or successive habeas corpus application was not presented in a prior application and that

(1) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(2) (a) the facts underlying the claim could not have been discovered previously through the exercise of due diligence; and

(b) those facts, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2244 (b)

(7) Send the completed motion, the original and two copies, to:

**Clerk of Court**
**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall United States Court House**
**40 Foley Square**
**New York, New York 10007**

## MOTION

1. (a) Name and location of court which entered the judgment of conviction under attack Supreme Court County of Monroe

   (b) Case number 0676/1984

2. Date of judgment of conviction October 24, 1986

3. Length of sentence 50 years to life Sentencing Judge Raymond Cornelius

4. Nature of offense or offenses for which you were convicted: Four counts of murder in the second degree and five counts of attempted robbery

5. Have you ever filed a post-conviction petition, application, or motion for collateral relief in any federal court related to this conviction and sentence?
   Yes ( ) No (✔)
   If "yes", how many times? ____________ (if more than one, complete 6 and 7 below as necessary)
   (a) Name of court ____________
   (b) Case number ____________
   (c) Nature of proceeding ____________
   (d) Grounds raised (list all grounds; use extra pages if necessary) ____________
   (e) Did you receive an evidentiary hearing on your petition, application, or motion?
   Yes ( ) No ( )
   (f) Result ____________
   (g) Date of result ____________

6. As to any second federal petition, application, or motion, give the same information:
   (a) Name of court ____________
   (b) Case number ____________

UNITED STATES DISTRICT COURT
FILED
JAN 08 2016
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

(c) Nature of proceeding ______________________________

(d) Grounds raised (list all grounds; use extra pages if necessary) ______________________________

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
Yes ( ) No ( )
(f) Result ______________________________

(g) Date of result ______________________________

7. As to any third federal petition, application, or motion, give the same information:
(a) Name of court ______________________________
(b) Case number ______________________________
(c) Nature of proceeding ______________________________

(d) Grounds raised (list all grounds; use extra pages if necessary) ______________________________

(e) Did you receive an evidentiary hearing on your petition, application, or motion?
Yes ( ) No ( )
(f) Result ______________________________

(g) Date of result ______________________________

8. Did you appeal the result of any action taken on your federal petition, application, or motion? (Use extra pages to reflect additional petitions if necessary)
(1) First petition, etc. No ( ) Yes ( ) Appeal No. ______________
(2) Second petition, etc. No ( ) Yes ( ) Appeal No. ______________
(3) Third petition, etc. No ( ) Yes ( ) Appeal No. ______________

10.

A. Ground one: DEFENDANT IS ENTITLED TO THE VACATUR OF HIS CONVICTION AND DISMISSAL OF THE INDICTMENT, BECAUSE HE IS ACTUALLY, FACTUALLY INNOCENT.

The case for Michael Rhymes "actual, factual innocence is simple. Ferrari and Hursz's murders took place in a robbery attempt at Rico's bar, and involved at least three armed men with absolutely no witness to identify these men. the identification came, at least for Rhymes, through a declaration by Ferrai that said, "Hey I know, you, your're..." and the testimony of Hasan who testified Rhymes had robbed Ferrai a year prior to the instant robbery. Thus, signifying Rhymes identity by previous recognition, and by the prosecutor's serious emphasis on this connection in the summation.

Rhymes was completely unknown to Ferrari, uninvolved in the prior robbery in 1983, and in every other way unconnected to the crime and its participants. the identification of the collaborating stranger eyewitness was fatally compounded when Lafredo, whom had viewed an undisclosed photo array, named Rhymes as one of the shooters from being seen inside Rico's bar on other occasions.

1. 1983 PRIOR ROBBERY OF RICO"S BAR

Suie Rothenburgh, the barmaid at Rico's bar in 1983, related that she was present in the May of 1983 when the bar was robbed. She stated that three armed men: two male blacks and one white male robbed it. The first black male that approached her while walking to her car was six feet, about 170lbs, 30-35 years old, wearing a zipped

up Parka hiding his face, glasses, and a mustache. This armed black male had a handgun and his nose was sticking out past the hooded portion of his coat. At gunpoint, he ordered her to get into her car, which she did, and he got in too. Once they were in the car, a second male black male about 5'9 approximately 140-150lbs, wearing a stocking mask covering his face, a long dark coat that reached his knees, gloves, and wearing sneakers got into the car. the second suspect had either a handgun or rifle. as the barmaid and the two men exited the car to approach Rico's apartment, the barmaid saw the third armed man carrying a shotgun or a rifle, male white appearing to be in his twenties, 140lbs, 5'8, shoulder length blond hair, black work boots, and a zipper type sweatshirt. Both of the male blacks entered Rico's apartment, but only the masked male black returned with the key to the bar. he entered the bar, but returned a short time later. He went back into Rico's apartment and a few minutes later both male blacks came out with Rico without pants on and his hands were tied in front of him. They entered the bar and went to the safe, and once the safe was opened his glasses were taken from him, because he could not see without his glasses. Rico and Euie were both tied up, and and the three-armed men fled. Euie stated she had spoken to another employee she thought was the person responsible was a tall male black and a shorter male black who hung in the area of the bar selling lighters and other items of jewelry to employees of Rochester Products.

**2. CAMPBELL, STOOD NEXT TO RIOC BEFORE HE WAS SHOT**

As the three armed men entered Rico's bar, a pistol was pointed at

Campbell, the one carrying the shotgun went to the end of the bar by the kitchen, and one went into the kitchen with Rico. Rico was shot behind her, and she did not mention him saying anything before being shot.

3. INVESTIGATOR ASSISI. INITIALLY TOOK PHYILLIS REPORT

Investigator Assisi, a Utica Police Department officer, initially interviewed Phyllis Taylor before the Rochester Police Department, and was told by Phyllis that Dante was another name for Jesse hammock. That him, Clark and Thurman Dicker (aka Spanky) had robbed Rico's bar in 1984.

4. WITNESSES TESTIMONIES COULD REASONABLY SEEN SHOWN TO HAVE BEEN TAL ORED IN A MATERIAL RESPERCTS.

Diane Lafredo trial testimony claimed a pistol was pointed at her head, but she never mentioned this fact to the police before trial. The uncalled witness, Tracy Campbell, actually told the police a pistol was pointed at her.

Diane Lafredo testified at trial that she heard Rico say, "Hey I know you, you're" just before he was shot, and that he was halfway or further at the other end of the bar from where she was by the kitchen. Tracy Campbell, the uncalled witness, had told the police she was standing next to Rico when he was shot, and never mentioned the statement Lafredo attributed to him.

Diane Lafredo reviewed an undisclosed photo array at the pretrial with the police that was never made know to the defense. Who did she view if the gunmen all wore mask? More importantly, when court resumed the following day, she claimed to have remembered Rhymes from seeing him in the bar prior to 1984 robbery, and on that basis and

was permitted to make an in court identification. however, the barmaid from the prior 1983 robbery also mad this same claim, but never identified whom the suspect was. Why wasn't she shown Rhymes photo? or was she?

Ali Hasan testified at trial that he and Rhymes had robbed Rico's bar in 1983, and they did not wear any masks. the barmaid from that robbery said two of the men did have masks at the time. In an offer of proof outside of the jury, Hasan had knives at the 1983 robbery, but testified before the jury that they found a rifle underneath Rico's bed. The barmaid from the 1983-not called to testify-told police that all three men were armed with guns.

Phyllis Taylor testified at trial that she knew Rhymes as Dante, and made a in court identification. However, investigator Assisi from Utica Police Department, not called called to testify, said Phyllis Taylor told him that she knew Jesse Hammock as Dante. At Adrian Jackson's trial, she testified that she told investigator Assisi that Jesse and Thruman robbed Rico's bar.

5. WITNESSES,ROY TIMMONS AND JOE SMITH CONFERED OVER EVIDENCE AGANIST RHYMES.

ADA Stoddard went to Monroe County Jail looking for witness against Rhymes, and found Roy Timmons. Roy Timmons at some point collaborated with Joe Smith on the likely evidence against Rhymes to exchange for a deal to help their own criminal charges, and both ultimately testified against Rhymes on purported confessions.

The following, in summary, are the dispositive facts that when considered collectively demonstrate Rhymes' factual innocence:

(1). That Enrico Ferrari never saw the face of the masked suspect in the 1983 robbery of the his bar;

(2). That Jesse Hammock was the one known as Dante not Rhymes; and

(3). That Enrico Ferrari wore needed glasses that it was difficult to see without them.

The above facts provide clear and convincing evidence that Enrico Ferrari could not identify Rhymes on a previous occasion, and that Rhymes was univolved in the crime and unconnected to its participants, i.e., that (at the very least), given this information, no responsible juror would fail to have a reasonable doubt about Rhymes' guilt.

Rhymes is entitled at the very least to a new trial at which he may be afforded the opportunity to present the actual facts of his case to a jury. The jury had no idea whatsoever that Enrico Ferrari may have been blind to the point where he could not see enough to open a safe without glasses or that the armed man from the prior 1983 robbery wore a mask obstructing and identification of the suspect. the jury also had no idea that the person Phyllis Taylor testified she identified at trial, as Dante was not Michael Rhymes but Jesse Hammock. The entire proceeding, therefore, did not fulfill its most basic purpose of a reliable determination innocence the essence of a criminal trial. The facts brought on this motion establishing the high likelihood of Rhymes' actual, factual innocence entitled him, at the very least, to have the facts put before a jury.

10.

B. Ground two: DEFENDANT WAS DEPRIVED OF DUE PROCESS UNDER THE NEW YORK STATE CONSTITUTION BY THE ADMISSION AT TRIAL OF THE PROSECUTORIAL MISREPESENTATION THAT ENRICO FERRARI SAW THE FACE OF THE SUSPECT THAT HAD ROB HIM IN THE 1983 ROBBERY AND QUALIFIED HIS DYING DECLARATION IN HIS 1984 ROBBERY BY SAYING "HEY,I KNOW YOU, YOU"RE" AS RHYMES BEFORE HIS FATAL SHOOTING.

Without doubt, the prosecutor misrepresented to the jury the identity of the person being identified in the prior 1983 robbery as Rhymes. Consistent with this mistake, 24 months prior to trial and, conviction, ADA Stoddard disclosed an eyewitness victim's statement from the prior 1983 robbery at Rico's bar, indicating that the armed robber identified as Rhymes wore a mask. This eyewitness victim did not testify at trial. At trial, ADA Stoddard presented one of the purported robbers from the 1983 holdup of Rico's bar, asserting that he rob Rico's bar in 1983 with Rhymes and a person named Larry. During the prior 1983 robbery. ADA Stoddard's witness testified that, when Rhymes had previously robbed Rico's bar in 1983 with him, they did not have or wear any masks, were armed. ADA Stoddard, in summation told the jury, relying heavily upon the hearsay statement "Hey, I know you, you're-may relate to the prior 1983 crime as described by his witness. Hasan referred to "[t] he identification of Michael Rhymes by Enrico Ferrari" "...Rico may have seen Michael Rhymes...during the commission of that 1983 robbery...", "...Why would someone go in and rob a place where he had been there and returned? I would have to submit that Michael Rhymes is not a very

smart robber..." "Michael Rhymes walks in with a .22 pistol, goes right to Rico Ferrari because he knew Rico Ferrari. He takes Ferrari and marches him into the kitchen to directly where the safe was because Michael Rhymes knew where the safe was. This was the man who had robbed [Ferrari] a couple of years before, this was Michael Rhymes, at which point [Ferrari] says "I know you'." "...they have killed the man who could identify Michael Rhymes..." Either ADA Stoddard prepard Hasan to testify describing the prior 1983 robbery without personally viewing the police report of the eyewitness victim Euie Rothenburgh, or Hasan's testimony and ADA Stoddard's summation was incorrect. These facts, in conjunction, support a finding that ADA Stoddard knowly misrepresented who was the robber of 1983.

To further drive home the point-misrepresented who was the robber-ADA Stoddard, again with another witness, Phyllis Taylor, asserted that Dante had been one of the 1984 robbers because her boyfriend Clark told her, and she knew Rhymes as Dante, present with him at the time when in fact, she said Dante was Jesse Hammock to investigator Assisi who was not called to testify at trial. ADA stoddard put great emphasis on Michael Rhymes is Dante, and then had Phyllis Taylor identify Rhymes in court on this misrepresentation.

ADA Stoddard was so driven to prove his case against Rhymes, he personally went to Monroe County Jail where Rhymes was incarcerated to find witnesses to support his case, he met with Roy Timmons, who had conferred over evidence against Rhymes with Joe Smith, and both ended up testifying for ADA Stoddard aginst Rhymes on allegedly confessions. However, both witnesses' testimony was inconsistent with the investigating police offices, eyewitnesses, and ADA Stoddard's

theory that Rhymes had shot Enrico Ferrari because he recognized him. Roy Timmons claimed Rhymes had shot Enrico because he wound not open the safe, but Joe Smith claimed that Jesse Hammock, told to him by Rhymes, shot Enrico Ferrari because he would not open the safe. Joe smith further-said Rhymes never admitted to shooting anybody.

If ADA Stoddard actually believed at the time of trial that Rhymes attempted to rob Rico's bar and then intentionally shot and killed Enrico Ferrari and Robert Kurysz under the felony murder theory, he not only did not appreciate the significance of the contrary information in his file. Eule Rothenburgh's police report and investigator Assisi report of Phyllis Taylor, he likewise did not understand the Hasan and Taylor testimony he himself, had elicted.

If ADA Stoddard's misrepresentation of the facts at trial were not intentional-they clearly-may be fairly characterized as grossly negligent in that they he failed to understand the significance or the contrary police reports his investigators uncovered. his failure to elicit the 1983 robber in fact, identified as Rhymes had on a mask, Dante was initially identified as Jesse Hammock may have been the result of the circumstances of this particular case, but such contrary information of witnesses, or at least a discussion of the information with them, certainly would have prevented the fiasco of a trial that took place.

Rhymes has presented adequate allegations of prosectorial misconduct alone sufficient to require this Court to conduct an evidentiary hearing for the purpose of resolving those accusations. To raise a triable issue some actual evidence of knowledge on the part of the prosecution that Hasan and Taylor's testimony was false

must be submitted to this Court. Rhymes pro se motion papers contain the prosecution's police investigation reports which contradicts Hasan and Taylor's testimony, and by ADA Stoddard's direct examination emphasizing Dante as Rhymes connection and his connection in the summation with Rhymes and the prior 1983 recognition of the deceased is probative evidence tending to demonstrate that ADA Stoddard was aware that Phyllis Taylor and Ali Hasan falsely testified a triable issue is raised and accordingly, it would clearly be an abuse of discretion for this court to deny the motion to vacate on this ground without an evidentiary hearing.

In reliance on this claim, Rhymes asserts not only sufficient proof that ADA Stoddard knowingly and intentionally misrepresented the identity of the robber, which was the central issue in this case, notes that the court in fact, charged the jury accordingly, and thus giving credence of these misresentations.

There is no evidence of Rhymes identity as one of the robbers. Thus, the false evidence used for that purpose and ADA Stoddard's summation argument of Rhymes identity as one of the robbers' carries no weight whatsoever once it is known that the deceased did not recognized Rhymes. Without question, the false evidence and misrepesentation by ADA Stoddard were the sin qua non of the robber's identity-thus the murder conviction and cannot be fairly characterized as an isolated incident.

10.

C. Ground three: BECAUSE ADA STODDARD FAILED TO PRODUCE ANY INFORMATION ABOUT DIANE LAFEDO'S PRE_TRIAL PHOTO ARRAY IDENTIFICATION WITH THE POLICE, RHYMES' RIGHT TO DUE PROCESS UNDER BRADY V MARYLAND AND PEOPLE V VILLARDI WAS VIOLATED CPL 440.10 (1)(h) NY CONST. ART 1, SECTION 6; U.S. CONST. AMENDS, V, XIV

The failure to disclose the fact that Diane Lafredo had been shown a photo array by the police, constitutes a violation of ADA Stoddard's obligation to disclose evidence under Brady V Maryland.

Here, ADA Stoddard failed to disclose identification procedure that one of his key witnesses participated in with police. The defense was provided with absolutely no information concerning this identification procedure, which was the central issue in Rhymes conviction. Specifically, Diane Lafredo viewed a photographic array prior to trial with law enforcement, but who was in the photographs or was she able to make a positive or negative identification remains unknown. Equally disturbing is the fact that she made an in court identification of Rhymes based on a jarred memory she claimed to have suddenly dawned on her during the proceeding.

Under these circumstances, this Court must presume prejudice in the context of the sixth Amendment because it impaired Rhymes constitutional right, ADA Stoddard is directly responsible for this actual denial of assistance of counsel to know if this identification may have been helpful to defense, and has caused such substantial prejudice to the defendant that he has been denied due process of law.

Diane Lafredo's pre-trial identification procedure is evidence favorable to the accused within the scope of the Brady exculpatory material rule because to the extent Diane Lafredo misidentified one of the suspects; the likelihood of misidentfiction of Rhymes is affected.

10.

D. Ground four: DEFENDANT'S CONSTITUIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY THE CUMULATIVE EFFECT OF NUMEROUS PREJUDICIAL ERRORS COMMITTED BY DEFENSE COUNSEL.

Michael Rhymes stands wrongly convicted of murder in which he was in no way involved, largely because of his own lawyer's failure to familiarize himself with the facts of the case and undertake an investigation of those facts in time for trial. These facts are well reasoned and argued supra at points I, II, III. Whatever other mistakes a defense lawyer may make, a defendant's right to representation does entitle him to have counsel conduct appropriate investigation, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial. Defendant consistently told his trial counsel that he knew nothing about the crime or its participants. Despite that, trial counsel failed (1) to call Eurie Rothenburgh, Tracy Cambell, and investigator Assisi as fact witness: (2) Impeach Diane Lafredo and Jack Rush with their prior statements to the police; (3) Argue Brady violation for Diane Lafredo photo array identifcation procedure; and (4) Object to all the prosectorial misconduct argued herein. Yet, for whatever reason, no effort was made by trial counsel to present these arguments or evidence. An attorney's failure to present available exculpatory evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it. These claims supported by detailed rectal of the facts above.

9. If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not: ______________________________

10. State concisely every ground on which you now claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.

A. Ground one: ______________________________

Supporting FACTS (tell your story briefly without citing cases or law):

Was this claim raised in a prior federal petition, application, or motion?
Yes ( ) No (✓)

Does this claim rely on a "new rule of law?" Yes ( ) No (✓)
If "yes," state the new rule of law (give case name and citation):

Does this claim rely on "newly discovered evidence?" Yes ( ) No ( )
If "yes," briefly state the newly discovered evidence, and why it was not previously available to you.

B. Ground two: ______________________________

Supporting FACTS (tell your story briefly without citing cases or law):

______________________________

Was this claim raised in a prior federal petition, application, or motion?
Yes ( ) No ( )

Does this claim rely on a "new rule of law?" Yes ( ) No ( )
If "yes," state the new rule of law (give case name and citation):

______________________________

Does this claim rely on "newly discovered evidence?" Yes ( ) No ( )
If "yes," briefly state the newly discovered evidence, and why it was not previously available to you

______________________________

**[Additional grounds may be asserted on extra pages if necessary]**

11. Do you have any motion or appeal now pending in any court as to the judgment now under attack? Yes ( ) No (✓)
If yes, Name of court ______________ Case number ______________

Wherefore, movant prays that the United States Court of Appeals for the Second Circuit grant an Order Authorizing the District Court to Consider Applicant's Second or Successive Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

Michael Rhomes
Movant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this motion are true and correct.

Executed on 11-10-15 [date] Michael Rhomes
Movant's Signature

**PROOF OF SERVICE**

Movant must send a copy of this motion and all attachments to the attorney general of the state in which applicant was convicted.

I certify that on 11-10-15 [date], I mailed a copy of this motion*

and all attachments to Eric T. Schneiderman at the following address:

Office of the Attorney General Dept of Law
The Capitol Albany 12224-0341

Michael Rhomes
Movant's Signature

* Pursuant to FRAP 25(a), "Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing. Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

Wherefore, movant prays that the United States Court of Appeals for the Second Circuit grant an Order Authorizing the District Court to Consider Applicant' s Second or Successive Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

Michael Rhynes
Movant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this motion are true and correct.

Executed on 11-10-15 [date] Michael Rhynes Movant' s Signature

**PROOF OF SERVICE**

Movant must send a copy of this motion and all attachments to the attorney general of the state in which applicant was convicted.

I certify that on 11-10-15 [date], I mailed a copy of this motion*

and all attachments to Eric T. Schneiderman at the following address:

Office of the Attorney General Dept of Law
The Capitol Albany

Michael Rhynes
Movant' s Signature

* Pursuant to FRAP 25(a), "Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing. Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

Michael Rhynes Din# 85-C-0181
Attica (
P.O. Box 149
Attica, NY 14011-0149




ATTICA CORR FAC

Clerk of Court
United States Court of Appeal
For the Second Circuit
Thurgood Marshall United State
Court House
40 Foley Square
New York, New York 10007

USM40LD
SDNY

Legal Mail

MANDATE

W.D.N.Y.
08-cv-548
Siragusa, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

---

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of December, two thousand fifteen.

Present:

Debra Ann Livingston,
Gerard E. Lynch,
*Circuit Judges*,
Jed S. Rakoff*
*District Judge*.

---

Michael Rhynes, also known as Michael Rhymes,†

*Petitioner*,

v. 15-3654

Harold D. Graham,

*Respondent*.

---

Petitioner moves to file a successive 28 U.S.C. § 2254 petition in the United States District Court for the Western District of New York. Upon due consideration, it is hereby ORDERED that the motion is DENIED as unnecessary and the matter TRANSFERRED to the district court.

Because Petitioner was permitted to withdraw his 2008 § 2254 petition without prejudice to refiling, the § 2254 petition Petitioner now wishes to file is not successive. *See Graham v. Costello*, 299 F.3d 129, 132 (2d Cir. 2002) (holding that, for a § 2254 petition to be successive, a prior § 2254 petition must have been decided on the merits); *see also Thai v. United States*, 391 F.3d 491, 495-96 (2d Cir. 2004) (holding that a second § 2255 motion was not successive where

---

* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

† The Clerk of Court is directed to amend the docket to reflect both versions of the Petitioner's name. The Petitioner's motion, state court opinions, district court opinion, and Department of Corrections and Community Supervision website each bear one of the two versions.

MANDATE ISSUED ON 01/07/2016

the movant had not "unambiguously indicate[d]" any belief that his initial § 2255 motion was meritless when he moved to withdraw that motion).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit